Christopher, Harwood sold a negro slave to John T. Corbin for 130 barrels of corn, and for value received of John Southgate, gave him a written order for it, which was accepted by Corbin. Part of the corn was delivered when applied for; but the balance refused. Southgate, after the death of Cor-bin, brought an action of assumpsit, in the County Court of King and Queen, against his administrator with the will annexed; charging in his declaration, that the said John T. Corbin in his lifetime being *in possession of 130 barrels of merchantable Indian corn, had, “for a valuable consideration to him paid by Christopher Harwood, undertaken and to the said Christopher Harwood promised to deliver the same to him, or to his order, and, in consideration thereof, and of a valuable consideration to the said Harwood paid by the plaintiff,” the order was drawn in his favour; the acceptance of which order by Corbin, the plaintiff’s application for the corn, the delivery of part, and refusal to deliver the rest, were all specially set forth and averred.
The defendant pleaded non-assumpsit by the testator; and, on trial of the issue joined thereupon, a witness for the plaintiff being interrogated by his attorney as to the proof of the debt from John T. Corbin to Christopher Harwood before the order in the declaration mentioned was made, proved the purchase of the negro as aforesaid to have been the foundation of Corbin’s acceptance of the said order: the defendant then offered to prove that the negro, when sold, was not the property of Harwood, and, after the order was excepted, had been taken by him, as agent for his sister, Anne Har-wood, out of Corbin’s possession, and had ever since been kept and detained by the said Anne Harwood as her property; which evidence the Court refused to permit to-go to the Jury; whereupon the defendant filed a bill of exceptions, and (a verdict and judgment having been entered for the plaintiff) took an appeal to the District Court, where the judgment being affirmed, he again appealed to this Court.
The Attorney-General, for the appellee, relied on Corbin’s acceptance of the order as obligatory upon him, and quoted the case of Pillans & Rose v. Van Mierop & Hopkins, (a)
The consideration on which the acceptance was founded was sufficient, notwithstanding Corbin was evicted of the slave: for a loss to the plaintiff, without any gain to the defendant, is sufficient to support an assumpsit. Harwood was indebted to Southgate, and willing to pay him by an *order on Corbin, whose acceptance suspended Southgate’s right to sue Harwood. This suspension was a loss to Southgate, and entitled him to claim of Corbin.
The doctrine is laid down by Kyd on Bills of Exchange, p. 74, and by Lord Mansfield, in Mason v. Hunt, (b) that, “if one man, to give credit to another, make an absolute promise to accept his bill, a third person who should advance his money upon it would have nothing to do with the equitable circumstances which might subsist between the drawer and acceptor. ” But this is a stronger case; for, here, there was not only a promise to accept, but an actual general acceptance.
The cases of Buckner and others v. Smith and others, and Holmes, executor of Elliott, v. Smock, (c) come up to this in principle. In each of those cases, a bond was given upon consideration of unlawful gaming; yet the obligor, having induced a third *679 person to accept an assignment, was bound to pay. The equity of Corbin is against Harwood, and he should have gone against him in Chancery; for the rights of Har-wood could not be decided in the suit between Southgate and Corbin, to which he was not a party; but, in equity, he would necessarily be a party.
Besides, the bill of exceptions is incomplete : no evidence appears of a lawful recovery of the slaves from Corbin. Proof that he was taken out of his possession is not sufficient; because such taking might have been tortious.
On Friday, the 17th of March, by the unanimous opinion of the Court, the judgment was affirmed.

 3 Burr. 1663.

 Doug. 299.

 1 Wash. 296, and 389.